CERCONE, J., joins.

Commonwealth, Appellant, *v.* Peljae.

Argued September 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *J. David Bean,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellant.

*Henry T. Crocker,* with him *Reynier, Crocker, Allebach & Reber,* for appellee.

OPINION BY VAN DER VOORT, J., December 11, 1974:

On October 23, 1972, at approximately 6:53 P.M., police officer William Evens was driving west on High Street in the Borough of Pottstown, when he observed a tan Plymouth sedan immediately in front of him proceeding in the same direction down High Street. Certain irregularities in the vehicle's progress down the street attracted Officer Evens' attention, prompting him

eventually to pull the car over for inquiry regarding the condition of the driver of the vehicle (one Frank J. Peljae, the appellee in this case). The officer placed appellee under arrest, took him to the police station, had a Breathalyzer test administered to him, and then formally charged him with operating a motor vehicle while under the influence of intoxicating liquor. At a jury trial held on March 4, 1974, the trial judge granted defendant's demurrer to the sufficiency of the evidence, stating: "the testimony is just too weak to allow a jury to speculate on [it] . . . ." The case is before us on the Commonwealth's appeal from the grant of this demurrer.

At the trial, Officer Evens testified regarding the driving "exhibition" presented by Mr. Peljae. The officer stated that he first observed appellee driving approximately twenty-five miles an hour (within the legal limits), at least two to three feet farther to the right than he should have been driving. When appellee reached a point about ten feet from a car inconveniently but legally parked in his path, he cut the wheel sharply to the left, narrowly missing the parked car. At the next intersection, confronted by a red traffic light and a car lawfully stopped for the light, appellee applied his brakes with such zeal that—even though only traveling twenty-five miles an hour—he deposited a sample of his tires, roughly one foot in length, on the pavement. After negotiating a right turn at the intersection, appellee proceeded north, swerving from side to side, three times coming very close to striking the curb on the east side of the street. Confronted several blocks later by a second red traffic light, appellee executed his second "panic" stop, prompting Officer Evens to activate his red dome light as a signal to appellee to pull his car over to the curb. Slightly more than a block later, appellee pulled to the curb, placed his transmission in reverse, and proceeded to ram the front of the officer's

patrol car. Officer Evens testified: "I detected an odor of alcohol coming from the car and he fumbled with his cards as he was trying to get them out for me. . . . When he got out of the car I already had his driver's license and I faced him face to face and detected a stronger odor of alcohol coming from Mr. Peljae. As he stood next to his car he had a swaying motion to his body and based on his driving exhibition and the facts as I saw them later, I advised Mr. Peljae that he was being placed under arrest for 1037, driving under the influence of alcohol."

Charles Robert Wagg, a police officer who had been called by Officer Evens to transport appellee to City Hall, and who administered various intoxication tests to appellee, also testified at the trial. Officer Wagg stated that he had observed appellee's actions on certain "performance" tests at City Hall, and had indicated on his check list that the effect of the alcohol on appellee was "mild". "He satisfactorily completed the performance tests. There was [sic] really no real unusual circumstances. He didn't fall when he was picking up the coins or anything like that, just a minor abnormality *that most individuals that are intoxicated might show,* nothing actually outstanding." (Emphasis added). The officer testified that the reading he obtained from a Breathalyzer test of appellee indicated that the latter had a blood alcohol level of .19 at the time of the test; a reading of .10 or higher gives rise to a legal presumption that a person is under the influence of intoxicating liquor.[1] Officer Wagg also testified specifically that, in his opinion, appellee was intoxicated at the time the tests were administered.

In the face of the preceding evidence, the trial judge granted appellee's demurrer to the sufficiency of the

---

[1] Act of April 29, 1959, P. L. 58, §624.1, added July 28, 1961, P. L. 918, §1, as amended, July 31, 1968, P. L. 758, No. 237, §1; December 22, 1969, P. L. 392, §1, 75 P.S. §624.1.

evidence, apparently basing his decision largely on Officer Evens' answer to a question on cross-examination. The answer indicated that there was some doubt in the officer's mind as to whether or not the appellee was under the influence of intoxicating liquor at the *time he made the arrest*. The entire testimony in this phase of the case is as follows:

### "CROSS-EXAMINATION

"BY MR. CROCKER:

"Q. There was some doubt in your mind at the time that you placed Mr. Peljae under arrest whether he was or was not under the influence of intoxicating liquors, isn't that true?

"A. I felt that I had substantial cause to bring the charge about.

"Q. You though you had causes to lodge the charge?

"A. Yes.

"Q. But there was some doubt in your mind at that time, was there not, whether he was or was not under the influence, is that correct?

"A. I believe in any arrest there is a certain amount of doubt in the officer's mind in fairness to the defendant.

". . . .

### "REDIRECT EXAMINATION

"BY MR. GUYER:

"Q. Officer, in your opinion was the defendant under the influence of alcohol?

"MR CROCKER: Objection, your Honor.

"THE COURT: Objection overruled and exception granted.

"A. Yes, sir, I do think so.

"BY MR. GUYER:

"Q. Was he taken in for a breathalyzer?

"A.   Yes, sir, he was.

".   . . .

"RECROSS-EXAMINATION

"BY MR. CROCKER:

"Q.   You formed the opinion but there was some doubt in your mind, was there not?

"A.   When I arrested the individual . . .

"Q.   (interposing) Please answer that question.

"A.   There is always room for doubt.

"Q.   And there is always room for doubt and there was doubt in your mind at this time. Thank you.

"THE COURT: That isn't what he said. He didn't say there was doubt here. He said there was always room for doubt when a person arrests.

"It is very different from saying there was doubt in this case. That isn't what he said. Don't misconstrue what he said. The jury gets a false impression of it.

"He said there always is room for doubt when a police officer makes an arrest.

"MR. CROCKER: Your Honor, I asked him specifically in this case.

"THE COURT: I know what you asked, but that isn't what he answered.

"MR. CROCKER: He is supposed to answer the questions I ask.

"THE COURT: You can't both answer the questions and ask the questions.

"MR. CROCKER: May I ask the question?

"THE COURT: Yes, you may.

"BY MR. CROCKER:

"Q.   In this particular case, not in any other cases that you have been involved in, in this particular case, there was some doubt in your mind when you arrested Mr. Peljae whether he was or was not under the influence of intoxicating liquors, isn't that true?

"A.   To be truthful I would have to say yes, sir.

"Mr. Crocker: Thank you.
"The Court: That is all."

From this testimony of Officer Evens, it is apparent that the officer believed the appellee to be under the influence of intoxicating liquor while he was driving his automobile. Had the officer answered the cross-examination question saying that he had "no doubt," at the time he made the arrest, of appellee's intoxication, such an answer would have weakened his credibility in view of the fact that there are so many things, such as illness, the taking of medicines, lack of sleep, injury, etc. that may give the first impression that a driver is under the influence of intoxicating liquor. The Commonwealth's evidence in this case of the irregular manner in which the appellee drove his car, his unsteadiness on his feet, the strong odor of alcohol on his breath, the relatively high percentage of alcohol in his blood, together with the opinion of two officers that he was under the influence of intoxicating liquor, was clearly sufficient evidence to require the case to go to the jury.

Reversed and remanded for a re-trial.